**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:** | **CASE NO. 16-03910** |
| **FARMACIAS PUERTO RICO** | **CHAPTER 11** |
| **Debtor(s)** | |
| | **FILED & ENTERED ON 08/16/2016** |

## OPINION & ORDER

Before the court is SF III PR, LLC's ("SF") *Urgent Motion for Immediate Surrender of Farmacias Puerto Rico's Premises* [Dkt. No. 25], Debtor in Possession, Farmacias Puerto Rico's ("Debtor") *Reply to Urgent Motion to Surrender Premises* [Dkt. No. 46] and additional replies and sur-replies related to the matter. As a result of the above mentioned motions, the court scheduled a hearing for August 10, 2016 [Dkt. No. 57]. At said hearing, the parties were given an opportunity to present their arguments and provide documents. At the conclusion of the hearing the court took the matter under advisement. In sum, the issue is whether there exists a lease agreement, verbal or otherwise, between SF and Debtor that can be assumed and/or breached.

Although the facts in this case appear to be straightforward, both parties in their written briefs and oral arguments presented confusing and conflicting versions to the court. The relevant facts are thus. Debtor purchased an ongoing business concern on June 30, 2014 from Carmen Leonor Cordova HNC Farmacia y Café Puerto Rico ("Seller"). The business was located on the first floor of Hato Rey Center, 268 Ponce de Leon Avenue, where it remains to this date. Also on June 30, 2014, the lease ("Lease") held by the Seller with the then owner(s) of Hato Rey Center

expired. This Lease was initially entered into on August 25, 1986.[1] On or about July 1, 2014, Debtor took possession of the premises previously occupied by the Seller. On or about July 22, 2014, SF acquired title to Hato Rey Center. On or about November 7, 2015, SF blocked the west side entrance to Debtor's premises. On November 18, 2015, SF delivered to Debtor a letter terminating the Debtors month to month holdover tenancy under the Lease and ordering the surrender of the premises by November 30, 2015, or by December 31, 2015 if Debtor surrendered possession of a specific area of the premises on or before November 21, 2015. The Debtor filed for bankruptcy on May 16, 2016.

SF maintains that Debtor was a party to the Lease pursuant to which it leased the premises. The Lease agreement expired on June 30, 2014, and has not been renewed. Between July, 2014 and November, 2015, the Debtor remained in the premises on a month-to-month holdover basis, pending the conclusion of negotiations with SF. Under this scenario, argues SF, (i) the Lease expired pre-petition and (ii) any holdover tenancy rights were terminated pre-petition. As such, the Debtor has no legal or equitable interest in the continued possession of the premises, the premises are not property of the estate and by extension, not protected by the automatic stay. For this reason the court should compel Debtor to immediately surrender the premises to SF.

Debtor contends that it is not and has never been a party to the Lease that expired on June 30, 2014, and that a separate agreement negotiated with the previous owner of the building was in place as of June 2014. The basic provisions were a five year renewable lease for Suite 03G of the Hato Rey Center building for a rent of $5,500 per month. A bond would be provided by the tenant in the amount of $23,000. Debtor's right to possess the premises upon which the

---

[1] At the time the Lease was signed the owners of Hato Rey Center, and therefore the lessors, were International Commercial Center, Puerto Rico, Inc.; Presidential Realty Corporation: F.D. Rich Company of Puerto Rico, Inc.; and the Estate of Murray Silverstein.

pharmacy and cafeteria operate, stems from that agreement. Debtor stressed in open court at the hearing on August 10, 2016, that this separate agreement was in writing. However, Debtor argues in its Reply brief that the contract was perfected verbally as per the Puerto Rico Civil Code and that it is still in force and assumable by Debtor. This contract, Debtor argues, was breached by SF when the west side entrance to the premises was closed off.

The court first considers SF's averment that Debtor was a holdover tenant under the 1986 Lease.[2] The court finds this statement to be without merit. It is undisputed that the 1986 Lease expired by its own terms on June 30, 2014. Neither SF nor the Debtor were parties to that Lease, nor has there been any evidence or argument by either party that there was a substitution of the original lessor/lessee from the Lease.[3,4] Additionally, in a subsequent motion[5] SF argues that it is not bound by the terms of the Lease. SF's reliance on the 1986 Lease is misplaced. It cannot be argued on the one hand that the Debtor is a holdover tenant from an expired lease and as such is bound by its terms with regards to term modifications and notice requirements, and on the other hand argue that the party attempting to enforce this holdover tenancy is not equally constrained by the same lease.

---

[2] "The Debtor was a party to a Lease Agreement (the "Lease Agreement"), pursuant to which it leased the Premises. The Lease Agreement expired on June 30, 2014, and has not been renewed. Between July, 2014 through November, 2015, Debtor remained in the Premises on a month-to-month holdover basis, pending the conclusion of negotiations with SF III." See SF's Urgent Motion, Dkt. No. 25, pg. 1.

[3] Contracts shall only be valid between the parties who execute them and their heirs, except, with regard to the latter, the case in which the rights and obligations arising from the contract are not transmissible, either by their nature, or by agreement, or by provision of law. Puerto Rico Civil Code § 1209 (P.R. Laws Ann. tit. 31, §3374),

[4] That notwithstanding, SF's letter of termination dated November 18, 2015 states at the onset that "SF III PR, LLC, *as successor in interest* to GS II Series 1998 C-1 Home Mortgage Plaza Hato Rey LLC, ("Landlord")…." Emphasis ours.

[5] "Because SF III was not a party to the original *Lease Contract*, and was unable to reach an agreement with the Debtor, then, it is not bound by the terms contained therein." See SF's Reply Dkt. No. 53, Pg. 5.

-3-

Having discarded the concept of a holdover tenancy, the court turns next to examine the likelihood of a verbal agreement between the parties. Under the laws of Puerto Rico, a contract is valid when it is "not contrary to law, morals, or public order." Colon v. Blades, 717 F.Supp.2d 175, 184 (D.P.R. 2010) (quoting Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 516–17 (1998)) (citing Puerto Rico Civil Code § 1207 (P.R. Laws Ann. tit. 31, § 3372 (1990)). A verbal contract much like a written contract is valid and enforceable. Colon v. Blades, 570 F.Supp.2d 204, 210 n. 7 (D.P.R .2008) (citing Morales v. Hosp. Hermanos Meléndez, Inc., 447 F.Supp.2d 137, 142 (D.P.R. 2006)). Therefore, a contract, regardless of its type, "has three elements: consent, a definite (and legal) object, and consideration." Citibank Global Mkts., Inc. v. Rodríguez Santana, 573 F.3d 17, 24 (1st Cir. 2009); see also Muñiz–Olivari v. Stiefel Lab., Inc., 496 F.3d 29, 35 (1st Cir.2007).

"Consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." Marrero–García v. Irizarry, 33 F.3d 117, 122 (1st Cir.1994) (citing P.R. Laws Ann. tit. 31, § 3401). Under Puerto Rico law, the consent of the contracting parties is an essential element of a contract. P.R.Laws Ann., tit. 31, § 3391. "Consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." P.R.Laws Ann. tit. 31, § 3401. Hence, an offer standing by itself will not establish the presence of a binding contract. Gonzalez Rodriguez v. Fumero, 38 P.R.R. 497, 504, 507–08 (1928). Rather, in order to have a contract, acceptance must be made of that offer. P.R.Laws Ann. tit. 31, § 3401. SF argues that the fact that it accepted monthly payments after the Lease expired is insufficient, by itself, to constitute consent to a new lease agreement. To bolster this claim, SF cites to Velez v. San Miguel, 68 D.P.R. 575, 577 (1948), which held, in relevant part, that without circumstances evidencing a different intent, the mere fact that monthly

payments were accepted would not create a new lease.[6] However, the facts in the captioned case are to the contrary. During the period of time that Debtor was making monthly payments to SF, there were ongoing negotiations and discussions in an attempt to agree to the material terms and conditions of a lease agreement between the parties. This renders the holding of Velez inapplicable to our facts and allows this court to conclude that SF's acceptance of the monthly payments by Debtor did in fact create the consent to a month to month verbal lease agreement.

The object of the contract on the other hand includes "[a]ll things, even future ones, which are not out of the commerce of man ..." and "[a]ll services not contrary to law or to good morals...." P.R. Laws Ann. tit. 31, § 3421; see also Bianchi–Montana v. Crucci–Silva, 720 F.Supp.2d 159, 166(D.P.R. 2010). Similarly, consideration "encompasses almost any motivation a person might have for entering into a binding agreement." P.R. Elec. Power Auth. v. Action Refund, 483 F.Supp.2d 153, 158 (D.P.R.2007) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 954 F.Supp. 438, 449 (D.P.R.1996)). Thus, "[i]n order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promise or a corresponding benefit to the promisor." P.R. Elec. Power Auth. v. Action Refund, 472 F.Supp.2d 133, 137–38 (D.P.R. 2006) (citing Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 201 (1st Cir.2004)). "A contract is made upon a 'consideration' when something is done, foreborne, suffered, or undertaken by one party at the request of another, which is made the foundation of the promise of that other." P.R. Elec. Power Auth. v. Action Refund, 472 F.Supp.2d at 137–38.

---

[6] Velez v. San Miguel and the case it references, Lopez v. Tribunal de Distrito, 67 D.P.R. 176, 1947 WL 7428 (P.R.), dealt with the expropriation of property and the eviction of a tenant by the recent purchaser of a house, respectively. The court in both cases found that the payment of monies to plaintiffs was not rent but rather compensation for the use of the property while the legal processes, i.e., expropriation, eviction, were taking place.

Upon the sale of Hato Rey Center to SF, Debtor was already in possession of the premises. Payments for rent where made by Debtor and accepted by SF for several months, and according to the proffers made by the parties and the documents received by the court, the parties were in communication negotiating a written lease contract. This arrangement began prior to SF's acquisition of the Hato Rey Center but continued unabated after the sale. Based on the structure of this arrangement, the court finds that a verbal contract existed between the parties, on a month to month basis.[7]

Having found that a verbal contract exists between SF and Debtor, the court turns to how such a contract would be terminated. Puerto Rico Civil Code § 1471 (P.R. Laws Ann. tit. 31, § 4092) states in relevant part:

Duration of lease if term not fixed

…

In every case the lease ceases without the necessity of a special notice upon the expiration of the term.

The Supreme Court of Puerto Rico determined in Rodriguez v. Alvarez Zumaquero, 92 D.P.R. 52, 1965 WL 14336 (P.R.) that in a month to month lease, any of the parties may terminate the same without the need for any special notice. In other words, no specific procedure is needed to terminate the lease. In Cesani Vargas v. Tribunal Superior, 92 D.P.R. 239, 1965 WL 14311 (P.R.), the Supreme Court of Puerto Rico concluded that a lessor may terminate a verbal agreement without a fixed term, where the rent is paid monthly, at the end of any month. On November 18, 2015, SF sent a letter of termination to Debtor which put an end to the verbal lease agreement – regardless of their characterization that Debtor was a holdover tenant under

---

[7] Should a term not have been fixed for the lease, it is understood for years, when an annual rent has been fixed, for months, when the rent is monthly, and for days, when it is daily. Puerto Rico Civil Code § 1471 (P.R. Laws Ann. tit. 31, § 4092). Here, the parties agreed on a monthly payment of rent that was given by Debtor and received by SF.

the Lease. As this verbal agreement terminated pre-petition, Debtor does not have any legal or equitable interest in the premises. The verbal lease agreement does not constitute property of the estate pursuant to 11 U.S.C. § 541(b)(2), and as such cannot be assumed.[8]

Based on the foregoing, the court GRANTS SF's *Urgent Motion for Immediate Surrender of Farmacias Puerto Rico's Premises* [Dkt. No. 25], and orders the Debtor to vacate the premises located in Hato Rey Center within thirty (30) days. The matter of SF's breach of the verbal lease agreement through the blocking of the west side entrance of the premises will not be determined at this time. The court allows the continuation of the complaint filed by Debtor in adversary proceeding 16-00142, but only as to the breach of contract claim, and any monetary damages resulting therefrom.

SO ORDERED

San Juan, Puerto Rico, this 16th day of August, 2016.

Brian K. Tester
U.S. Bankruptcy Judge

---

[8] Section 365(a) of the Bankruptcy Code authorizes a debtor-in-possession to reject, assume or assign executory contracts and unexpired leases. 11 U.S.C. § 365(a). Notwithstanding, Section 365(c)(3) provides that a debtor in possession "may not assume or assign any executory contract or unexpired lease of the debtor … if … (3) such lease is of nonresidential real property and has been terminated under applicable non-bankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3).